**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SUSAN KRALKA,

     Plaintiff,

     v.

BOARD OF TRUSTEES OF COMMUNITY
COLLEGE DISTRICT NO. 508, d/b/a CITY
COLLEGES OF CHICAGO,

     Defendant.

No. 13 C 1072
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Kralka ("Plaintiff) filed a complaint, *pro se*, against Defendant Board of

Trustees of Community College District No. 508, d/b/a City Colleges of Chicago ("Defendant")

alleging that she was discriminatorily terminated on the basis of her Ukrainian national origin in

violation of Title VII of the Civil Rights Act of 1964. Defendant now moves for summary

judgment. For the following reasons, Defendant's motion is granted in its entirety.

### I. STATEMENT OF FACTS

Plaintiff, a Ukrainian woman, was employed, at all relevant times, as an Adult

Educator by Defendant City Colleges of Chicago, a community college district in the Malcolm X

College Adult Education off-campus Program ("Adult Education Program"). From May 23

through August 13, 2011, the Adult Education Program provided twelve-week Adult Education

courses, including ESL classes, at multiple off-campus sites, including Northwestern Settlement,

Erie House, St. Hyacinth, and Nuestra Senora Church. Plaintiff, who has over 35 years of

experience teaching English as a Second Language ("ESL") and is highly knowledgeable of

Ukrainian language and culture, was assigned to teach sixteen hours of ESL classes at the

Northwestern Settlement, Monday through Thursday, from 5:00 pm to 9:00 p.m. Plaintiff was a member of the labor union, American Federation of State, County and Municipal Employees, Council 31, AFL-CIO and its Local 3506, and covered by its collective bargaining agreement with City Colleges.

Per the request of City Colleges' Chancellor's Office, the Office of the Inspector General for City Colleges of Chicago ("OIG") conducted a review of the Adult Education Program during the Summer 2011 semester, in part, to observe and document adult educators' and students' attendance during scheduled class hours. During the course of the OIG's general audit, the OIG observed that Plaintiff was not present at the start of her scheduled classes and, consequently, opened an individualized investigation into Plaintiff on suspected time fraud. As part of its investigation, the OIG conducted nine days of surveillance in July 2011 at the Northwestern Settlement during Plaintiff's scheduled class hours of 5:00 to 9:00 p.m., Monday through Thursday. During this time, despite submitting certificates of attendance reflecting that she was generally present from 5:00 to 9:00 p.m. and should be paid for four full hours of teaching, Plaintiff was not once observed to be present for the entire scheduled class hours. Instead, Plaintiff shortened her teaching hours by an average of one hour and twenty-four minutes per day.

During the OIG investigator's interview of Plaintiff, Plaintiff did not deny that during the Summer 2011 semester, she routinely arrived an hour late to her scheduled 5:00 pm class, but claimed she did so because of the "the very hot summer," her students need to refresh themselves after work, and due to severe property damage from a severe storm on June 30, 2011. Plaintiff also stated that she ended her class thirty minutes early so the woman who worked at the front desk could go home to her sick mother. While Plaintiff asserts that she added class time after the

summer semester ended, she did not keep any documentation of the attendance at such classes or receive approval to hold additional or substitute classes after the close of the semester.

OIG concluded its investigation into Plaintiff on November 21, 2011 and found that Plaintiff violated Defendant's Work Rules 7 (falsely representing to a superior the quantity of work performed), 11 (falsification of her attendance record), 17 & 37 (misappropriation and waste of City Colleges' funds in that on various occasions she misrepresented that she taught classes from 5:00 – 9:00 p.m.), 38 (inattention to her duties as an adult educator), and 50 (conduct unbecoming a public employee). Based on these Work Rule violations, particularly Rules 17 & 37, the Inspector General recommended that Defendant terminate Plaintiff and designate her as ineligible to be re-hired.

Based on the OIG's findings and recommendations, City Colleges issued a Notice of Pre-Disciplinary Hearing on December 7, 2011 to Plaintiff, notifying her that a disciplinary hearing was to occur the following day at which discipline, up to and including termination, would be considered. Plaintiff received a copy of the OIG's Investigative Summary, and Plaintiff was able to discuss the pending charges with her union representatives, Mark Freeman and Judith Sherman. Sherman was present at Plaintiff's December 8, 2011 Disciplinary Hearing and Plaintiff had an opportunity to rebut the charges. On February 29, 2012, Defendant advised Plaintiff that, as a result of the evidence presented at the Disciplinary Hearing, President Munroe recommended Plaintiff's termination to the Board of Trustees. On April 12, 2012, the Board terminated Plaintiff's employment with Defendant and designated her as ineligible for rehire.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on November 5, 2012 alleging that she was wrongfully terminated due to unlawful discrimination based on her Ukrainian national origin.

In addition to the investigation into Plaintiff, the OIG's general audit of the Adult Education Program led to further investigation into the suspected misconduct by two non-Ukrainian adult educators, "Adult Educator 1" and "Adult Educator 2," during the Summer 2011 semester. Adult Educator 1 adjusted his scheduled class time from a four-hour morning class and two-hour night class to a three-hour morning class and a three-hour night class without authorization. The OIG investigators observed that Adult Educator 1 violated Rules 7, 11, and 38, but found that Adult Educator 1 did not violate Work Rules 11 and 37 because OIG investigators observed him teaching the full scheduled twenty-four hours of class time per week, for which he was paid. The OIG did not recommend termination, but did recommend that City Colleges take "appropriate disciplinary action" against Adult Educator 1 for adjusting his class schedule without authorization, which resulted in a written reprimand being issued by Defendant.

OIG investigated Adult Educator 2 for suspected student attendance fraud, which could potentially affect funding for the Adult Education Program. OIG investigators determined that Adult Educator 2 submitted attendance records indicating that all eighteen enrolled students attended class, when only nine and four students, respectively, were physically observed present by OIG investigators. OIG investigators additionally found that on multiple dates, it appeared that one individual was signing in for all recorded students present. Adult Educator 2 resigned while the OIG's investigation was still pending, but the OIG determined that Adult Educator 2 violated Work Rule 11. Upon the OIG's recommendation, City Colleges designated Adult Educator 2 as ineligible for re-hire.

The OIG also continued to investigate their Adult Education Program during the Fall 2011 Semester. During this period, the OIG determined that two female Adult Educators had

been less than 15 minutes late to their scheduled classes, but did not recommend termination because they had provided legitimate reasons for their tardiness, which had been infrequent and minimal. Defendant terminated non-Ukrainian Adult Educator 3 upon the OIG's recommendation and finding in 2011 that he violated Rule 17, as well as Rules 7, 11, 12, 17, 38, 42, and 50, when he fraudulently misrepresented that he was teaching GED classes for Defendant while he was tutoring for his other employer during the same time period.

## II. LEGAL STANDARD

### A. Standard of Review for Summary Judgment

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). The Court's "function is not to weigh the evidence but merely to determine if there is a genuine issue for trial." *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildfire Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it

presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). I consider the record in the light most favorable to the nonmoving party, and draw all reasonable inferences in the nonmoving party's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

**B. Discrimination under Title VII**

Under Title VII, employers may not discriminate "against any individual with respect to [her] compensation, terms, condition, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A Title VII claimant may prove discrimination by presenting direct or indirect evidence.

Here, Plaintiff has presented no direct evidence of discrimination, and seems to rely on the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 93 S.Ct., 1817, 36 L.Ed.2d 668 (1973). Under the well-established burden-shifting analysis outlined in *McDonnell Douglas Corp. v. Green,* in order to survive summary judgment Plaintiff initially would have to show that (1) she was a member of a protected class; (2) she was meeting City Colleges' legitimate job expectations; (3) she was subjected to a materially adverse employment action; and (4) others outside the protected class were more favorably treated. *Id.,* 411 U.S. at 802, 93 S.Ct. 1817; *Hughes v. Brown*, 20 F.3d 745, 746 (7th Cir. 1994).

Only after Plaintiff makes a *prima facie* showing does the burden shift to Defendant to articulate a legitimate, nondiscriminatory explanation for the employment action. Plaintiff, then, would have the opportunity to prove that Defendant's explanation was a pre-text for discrimination. *Gates v. Caterpillar, Inc.*, 513 F.3d 680 (7th Cir. 2008); *Luks v. Baxter Healthcare Corp.,* 467 F.3d 1049, 1055 (7th Cir. 2006).

The parties agree that Plaintiff, a Ukrainian woman who was discharged by Defendant, is

a member of a protected class that suffered a materially adverse employment action, but dispute whether Plaintiff was meeting Defendant's legitimate employment expectations and whether other non-Ukrainian Adult Educators received more favorable treatment.

### III. DISCUSSION

**A.   Was Kralka meeting City Colleges' legitimate employment expectations at the time of her termination?**

The first question I must consider is whether Kralka was meeting Defendant's legitimate employment expectations at the time of her discharge. Unless a plaintiff demonstrates that she was meeting her employer's legitimate employment expectations at the time of her discharge, the employer may not be "put to the burden of stating the reasons for the plaintiff's termination." *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319 (7th Cir. 2002) (citing *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1179 (7th Cir. 1997)). In most cases, in determining whether an employee was meeting legitimate employment expectations, the court evaluates "the employee's job performance through the eyes of [the employee's] supervisors at the time of" the employee's suspension and discharge. *Gates v Caterpillar*, 513 F.3d 680, 689 (7th Cir. 2008).

Plaintiff was assigned to teach sixteen hours of ESL classes at the Northwestern Settlement Monday through Thursday, from 5:00 to 9:00 p.m., and submitted certificates of attendance reflecting that she was generally present and should be paid for these four full hours. Plaintiff, however, was rarely, if ever, present for the entire four scheduled class hours and was found to shorten her teaching hours by an average of one hour and twenty-four minutes per day. Plaintiff did not deny that she routinely arrived an hour late to her scheduled 5:00 p.m. classes and often ended her classes 30 minutes early during the Summer 2011 Semester; rather, she provided several excuses for why she delayed the start of her class relating to the needs of her students. Even assuming *arguendo* that Plaintiff was a gifted ESL teacher and had her students'

best interests in mind, Plaintiff falsely represented to Defendant her attendance records and the quantity of work performed, while continuing to receive full compensation for shortened teaching hours. Plaintiff did not inform Defendant that her students faced severe difficulties requiring adjustments to the class schedule or make a request or receive permission to substitute or hold additional class hours. Rather, she determined, on her own volition, to take a course of conduct that was in violation of Defendant's Work Rules 7, 11, 17 & 37, 38, and 50. For these foregoing reasons, I find that Plaintiff was not meeting Defendant's legitimate employment expectations.

### B. Did Defendant apply its legitimate employment expectations against Plaintiff in a discriminatory manner?

Plaintiff may still establish a prima facie case of discrimination if she can produce sufficient evidence to raise an inference that Defendant applied its expectations against her in a disparate manner (i.e. she was singled out because she was Ukrainian). *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319 (7th Cir. 2002). If Plaintiff can show that Defendant applied expectations more favorably to a similarly situated comparator, the second and fourth prongs of *McDonnell Douglas* merge—allowing Plaintiff to establish a *prima facie* case, stave off summary judgment for the time being, and proceed to the pretext inquiry. *Curry v. Menard,* 270 F.3d 473, 478 (7th Cir.2001) (plaintiff excused from showing met employer's expectations when employer punished plaintiff in a disparate manner for discriminatory reasons); *Gordon v. United Airlines, Inc.,* 246 F.3d 878, 886–87 (7th Cir.2001); *Flores v. Preferred Tech. Group,*182 F.3d 512, 515 (7th Cir.1999).

To establish that a comparator is similarly situated to Plaintiff at the time of the alleged discrimination, Plaintiff and the comparator need not be exact, but there must be "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow

the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Particularly, the plaintiff must show that the comparable employees "dealt with the same supervisor, were subject to the same standards, and engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). In disparate discipline cases, courts look to whether the alleged comparators "engaged in comparable rule or policy violations and received more lenient discipline." *Coleman v. Donahoe*, 667 F.3d 835, 850 (7th Cir. 2012).

The OIG conducted a general audit during the Summer 2011 Semester which revealed that three Adult Educators, including Plaintiff, required further investigation on an individual basis. The individual investigations were conducted by OIG investigators and revealed improper conduct of varying severity, and all three were, at minimum, reprimanded by City Colleges for violating Work Rules. OIG investigators found that "Adult Educator 1" had adjusted his schedule without permission, in violation of the rules. OIG recommended only "appropriate disciplinary action" which resulted in Defendant issuing a written reprimand, because OIG investigators observed that he taught the total amount of scheduled hours for which he was compensated. "Adult Educator 2," however, repeatedly falsified attendance records in violation of Rule 11, which could potentially affect funding for the Adult Education Program; although, Adult Educator 2 resigned before he could be terminated, Defendant took the harshest action it could take when it designated Adult Educator 2 as ineligible for rehire.

The OIG continued to investigate their Adult Education Program into the Fall 2011 Semester. From this investigation, Plaintiff identified two female Adult Educators of Polish

national origin that were late to class, but not terminated. These teachers' minimal (less than fifteen minutes) and infrequent tardiness is easily distinguishable from Plaintiff's routine tardiness of one hour, such that the Polish Educators were warranted more lenient discipline. One other non-Ukrainian Adult Educator was, however, terminated in the Fall 2011 semester for violating several rules, including Work Rule 17, when he fraudulently misrepresented to Defendant that he was teaching GED classes for City Colleges while he was actually tutoring for another employer. OIG found that this Adult Educator, like Plaintiff, had violated Work Rules 7, 11, 17, 38, and 50 relating to submitting false records, inattention to duties, and misappropriating funds. The OIG recommended termination, and Defendant, accepting OIG's recommendation, terminated this Adult Educator and designated him as ineligible for rehire.

There is no evidence that Defendant enforced its legitimate employment expectations in a disparate manner. Rather, what the record shows is consistent treatment by the OIG in its investigation, documentation, and evaluation of Work Rule violations. When a Work Place violation is found, the OIG makes a recommendation to Defendant on an appropriate course of action, which Defendant appears to follow closely. If the Work Rule violation is severe, particularly relating to falsifying records and/or misappropriating funds, the OIG makes a recommendation for termination and demarcation that the Adult Educator is ineligible for rehire. Plaintiff has failed to establish that a non-Ukrainian Adult Educator was treated more favorably for comparably severe violations of Work Rules.

Because Plaintiff has failed to establish a prima facie case of discrimination based on national origin, I need not address any argument that Defendant's reason for terminating Plaintiff was pre-textual.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety.

ENTER:

James B. Zagel
United States District Judge

DATE: December 18, 2014